**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **LINDA GOUGH,** | |
| **Plaintiff,** | **Case No. 17-2341-PJM** |
| **v.** | |
| **BANKERS LIFE AND CASUALTY COMPANY,** | |
| **Defendant.** | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant Bankers Life and Casualty Company ("Bankers Life" or the "Company") seeks dismissal of Plaintiff Linda Gough's ("Plaintiff") Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In her Amended Complaint (ECF No. 39), Plaintiff concludes that Bankers Life misclassified her as an independent contractor.  However, the few facts that Plaintiff asserts simply do not state a plausible violation of the Fair Labor Standards Act (and, indeed, support her proper classification as an independent contractor).  Thus, Plaintiff's Amended Complaint is legally insufficient, and Bankers Life submits that the Court should dismiss it with prejudice.

I.    **BACKGROUND**

On September 21, 2018, the Court issued its Memorandum Opinion granting Bankers Life's Motion to Dismiss Plaintiff's Complaint, and allowing Plaintiff 30 days in which to file an Amended Complaint that pleads "(1) Bankers Life misclassified her as an independent contractor during the course of her employment, and (2) the FLSA does not exempt her from its

protection." ECF No. 37, at 7. On October 22, 2018, Plaintiff filed her Amended Complaint accompanied by six exhibits.[1]

Her Amended Complaint asserts the following facts germane to her purported misclassification claim against Bankers Life:

Plaintiff alleges that she was hired and worked for Bankers Life as an Insurance Agent from February 2016 through July 2016. ECF No. 39, at 1. Plaintiff then asserts that she spent two days a week making phone calls to pursue sales leads, while spending the remaining three days per work week meeting with clients, preparing materials, and doing on-line courses. *Id.*

She further alleges that "Bankers Life hired me as a 1099 Insurance Agent working on 100 percent commission. However, it was an inappropriate job title and classification for the work it entailed. I, along with many others, performed for less than minimum wage violating the FLSA." *Id.* at 2. She also claims "[a]pproximately, 46 percent of the employees that were there during my time left the company." *Id.*

Plaintiff further claims that her supervisor was terminated and she was "never reassigned a new supervisor." *Id.* She asserts that Omar Torres, Unit Sales Manager at Bankers Life, "was willing to let me stay on the team and gain experience. When I explained that I was not making minimum wage, he said that I did not have to continue employment, but that he was willing to continue to have me work at Bankers Life." *Id.* Plaintiff found that unacceptable and returned only to wind down her ongoing business. *Id.* Plaintiff states that "I found it unreasonable that I could not make a living wage, let alone pay for employment benefits, the very benefits I was selling." *Id.*

Plaintiff also alleges that "[a]s I invested time and money in obtaining my life and health

---

[1] While the exhibits show that Plaintiff unfortunately has encountered difficult personal circumstances, none of them bear in any way on Plaintiff's relationship with Bankers Life.

license," she worked at State Farm and interviewed at Geico which had job descriptions similar to her job duties at Bankers Life. *Id*.

Plaintiff then applied for unemployment in January 2017, but was denied benefits, observing that the "result of the DLLR Claimant Questionnaire referenced Section 8-208a; an insurance agent performs payments solely by commissions and the time at Bankers Life is not covered employment." *Id*. at 3.

She further claims "Bankers Life sponsored me for an on-line class to prepare for the Life and Health exam.  I had to pay for the on-line class, the exam, and the license in both DC and MD." *Id*. at 9.  She states that "[d]uring my three-month SNA [Successful New Agent], vendors who sold names of interested parties contacted me.  The idea was that I would buy leads to sell insurance." *Id*. at 9.

Finally, her Amended Complaint alleges that "[i]t was also required to mail packet's [sic] of information about Bankers Life to cold leads, and there was no mail room, or postage supported by the company." *Id*. at 10.

## II.     LEGAL ARGUMENT

### A.     <u>Standard of Review</u>

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper when a complaint fails to state a claim upon which relief can be granted.  Fed.R.Civ.P. Rule 12(b)(6).  On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the facts alleged in the complaint as true.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Although pleadings filed by *pro se* litigants are held to a less stringent standard than those prepared by attorneys, *pro se* litigants are not relieved of the obligation to allege facts

sufficient to support a proper legal claim. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The facts alleged in a *pro se* plaintiff's complaint must ordinarily be taken as true, but bare conclusory statements "are not entitled to the assumption of truth." *Aziz v. Alcolac, Inc.,* 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 679)).

*Pro se* pleadings further must meet the "plausibility" standard. *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009). A court should grant a motion to dismiss when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (internal quotations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949. The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Stated differently, if it appears that a plaintiff's allegations are insufficient to raise a right to relief above the speculative level, a court must dismiss the claims. *See Twombly*, 127 S. Ct. at 1965; *Mylan Labs.*, 7 F.3d at 1134. Indeed, the Fourth Circuit has concluded that the Supreme Court's decision in *Twombly* establishes a standard that is "more favorable to dismissal of a complaint" at the earliest stages of a case than previous standards. *Giarratano v. Johnson*, 521 F.3d 298, 304 n.3 (4th Cir. 2008) *(internal quotation marks omitted).*

Here, Plaintiff's Amended Complaint does not meet this standard, and, therefore, it must be dismissed.

**B.**     **Plaintiff Has Failed To State A Misclassification Claim**

Plaintiff's attempt to allege a claim for misclassification under the Fair Labor Standards Act cannot withstand scrutiny.   Various factors, including the "economic realities" test, determine whether an employer-employee relationship exists for purposes of the Fair Labor Standards Act.  *See Montgomery v. Iron Rooster-Annapolis, LLC*, 2017 U.S. Dist. LEXIS 39472, at *6 (D. Md. March 20, 2017).   This test balances several factors: "(1) the degree of control which the putative employer has over the manner in which the work is performed; (2) the opportunities for profit or loss dependent upon the managerial skill of the worker; (3) the putative employee's investment in equipment or material; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) whether the service rendered is an integral part of the putative employer's business." *Randolph v. PowerComm Constr., Inc*., 7 F. Supp. 3d 561, 569 (D. Md. 2014); *see Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011).  No single factor is dispositive; rather, the totality of the circumstances must be considered.  *Iraheta v. Lam Yuen, LLC*, DKC 12-1426, 2012 U.S. Dist. LEXIS 169901, at *10 (D. Md. Nov. 29, 2012).

In this case, Plaintiff alleges nothing that could plausibly support a misclassification claim.  The work she references – reporting to the office, making telephone calls, meeting with clients, and preparing materials – provides no basis to indicate any actionable misclassification. No factfinder could draw a reasonable inference from these allegations that Bankers Life exercised the requisite level of control or direction over Plaintiff's activities, much less that she has satisfied any of the remaining economic realities factors.

Moreover, the facts she has added to her Amended Complaint support the conclusion that she was properly classified as an independent contractor.  For example, she was required to pay for own employment benefits, (ECF No. 39, at 2), paid for an on-line class to prepare for the licensing exam, paid for the exam, and paid for license in both DC and MD (*Id*. at 9), and was aware that she had to purchase her own leads for sales purposes.  *Id*.  Further, she acknowledged that there was no mailroom or postage paid for by Bankers Life.  *Id*. at 10.  All of these allegations point to the conclusion that she made her own investment in resources to perform the job, and thus, favor independent contractor status.

In addition, she did not have a supervisor after one resigned (ECF No. 39, at 1), which also suggests that she had responsibility for controlling the manner and means by which her tasks were performed.  *Cf. McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235 (4th Cir. 2016).

> None of this is to suggest that a worker automatically becomes an employee covered by the FLSA the moment a company exercises any control over him. After all, a company that engages an independent contractor seeks to exert some control, whether expressed orally or in writing, over the performance of the contractor's duties and over his conduct on the company's premises. It is rather hard to imagine a party contracting for needed services with an insouciant "Do whatever you want, wherever you want, and however you please."

*Id*. at 242.

Her factual additions also militate against any indication of permanence in the position. She was at Bankers Life for four months before she decided to discontinue the relationship, observing that "[a]pproximately, 46 percent of the employees that were there during my time left the company."  ECF No. 39, at 2.   Certainly, a turnover of nearly half the "employees" in less than a year comports with independent contractor status.

In line with the conclusion that Plaintiff was an independent contractor, Maryland's Department of Labor, Licensing and Regulation denied her unemployment claim, referencing

that an insurance agent paid on commission is not covered employment. *Id*. at 2-3.

All told, Plaintiff has failed to set forth sufficient factual assertions to state a plausible claim for misclassification under the FLSA.

###    C.    Plaintiff's Amended Complaint Omits Any Exemption Allegation

The Court's Memorandum Opinion also provided that Plaintiff plead that "the FLSA does not exempt her from its protections." ECF No. 37, at 7. Yet, her Amended Complaint is devoid of any reference to any FLSA exemption. If anything, Plaintiff's allegations, at a minimum, suggest the FLSA's outside sales exemption would apply – even assuming she could show she was not an independent contractor.

The U.S. Department of Labor regulations define an outside salesperson for purposes of the FLSA exemption as one whose "primary duty" is making sales and who is "customarily and regularly engaged away from" the employer's place of business. 29 C.F.R. § 541.500. The regulations further provide that "employees who spend more than 50% of their time performing exempt work will generally satisfy the primary duty requirement" but "nothing . . . requires that exempt employees spend more than 50% of their time performing exempt work." *Id.* § 541.700(b).

Exempt outside sales work includes actions "performed incidental to and in conjunction with the employee's own outside sales or solicitations," *i.e.*, "work that furthers the employee's sales efforts," including, but not limited to "writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences." *Id.* § 541.500(b). It includes "promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitation . . . ." *Id.* § 541.503(a).

Plaintiff's own allegations in the Amended Complaint indicate she falls within the scope

of the exemption.  Plaintiff asserts that she spent two days a week making phone calls to pursue

sales leads, while spending the remaining three days per work week meeting with clients,

preparing materials, and doing on-line courses (ECF No. 39, at 1) – facts indicating she was

customarily and regularly engaged away from Bankers Life's place of business.  Further, her

contention that "[i]t was also required to mail packet's [sic] of information about Bankers Life to

cold leads, and there was no mail room, or postage supported by the company" (*id*. at 10)

suggests promotional work incidental to and in conjunction with her own outside sales or

solicitations.

    At bottom, Plaintiff's failure to allege any facts that might militate against application of

the outside sales exemption further corroborates the propriety of dismissal.

## III.   <u>CONCLUSION</u>

    For the foregoing reasons, Bankers Life requests that the Court grant its Motion in all

respects, and dismiss with prejudice Plaintiff's Amended Complaint.


October 26, 2018                       Respectfully submitted,

                                      /s/  *Paul J. Kennedy*

                                      Paul J. Kennedy (MD Federal Bar 15447)
                                      LITTLER MENDELSON, P.C.
                                      815 Connecticut Avenue, NW
                                      Suite 400
                                      Washington, DC  20006-4046
                                      202.842.3400
                                      pkennedy@littler.com

                                      Attorneys for Defendant Bankers Life and
                                      Casualty Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2018, the foregoing Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint was filed with this Court via its CM/ECF system and a copy was served by U.S. First Class Mail and via electronic mail, on the following:

Linda Gough
6900 Wisconsin Ave
#30497
Bethesda, MD 20824

Plaintiff *Pro Se*

/s/  *Paul J. Kennedy*
Paul J. Kennedy

159084717.1 054835.1559