IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| **LINDA GOUGH,** | * | | |
| | * | | |
| Plaintiff, | * | | |
| | * | | |
| v. | * | Civil No. | **PJM 17-2341** |
| | * | | |
| **BANKERS LIFE AND CASUALTY COMPANY,** | * | | |
| | * | | |
| | * | | |
| Defendant. | * | | |

## MEMORANDUM OPINION

On September 21, 2018, the Court dismissed the initial Complaint filed by Plaintiff Linda Gough, *pro se*,[1] against her former employer, Defendant Bankers Life and Casualty Company ("Bankers Life"). After reviewing the report of an independent counsel appointed by the Court to review her case, the Court granted Gough leave to file an Amended Complaint within thirty days, in which she could allege that Bankers Life had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., by improperly classifying her as an independent contractor when in fact she allegedly performed the responsibilities of an employee—who would therefore be entitled to such benefits as minimum wage and unemployment insurance. Gough filed an Amended Complaint, ECF No. 39, on October 22, 2018, within the time limit specified by the Court, but still proceeding *pro se*. On October 26, 2018, Bankers Life filed a Motion to Dismiss. ECF No. 40.

For the following reasons, Bankers Life's Motion to Dismiss is **GRANTED**.

---

[1] Gough is proceeding *pro se* despite the Court's strong recommendation that she retain counsel to assist her in filing an Amended Complaint. *See* ECF No. 37 at 7 ("The Court strongly encourages Gough to retain counsel who may be willing to represent her on a contingency fee . . . ."). The Court would note, however, that it appointed two *pro bono* counsels for Gough earlier in the case and enlisted a third attorney to draft a report for Gough outlining possible colorable claims she might have against Bankers Life. But both of Gough's previously appointed *pro bono* counsels withdrew from the case, and the Court declined to appoint a new attorney for her, given the indication that Gough's prior counsels sought release of their obligations to represent her due to her unwillingness to cooperate with them.

1

## I.

The Court's Memorandum Opinion of September 21, 2018, ECF No. 37, thoroughly recites the factual background and procedural history of the case. This Opinion will discuss the relevant facts alleged in Gough's Amended Complaint as well as the procedural developments that have occurred since she filed it on October 22, 2018.

According to her Complaint and Amended Complaint, Gough worked for Bankers Life as a "1099 Insurance Agent" from February 2016 through July 2016. ECF No. 39 at 1–2. She spent two days per week "making phone calls to pursue sales leads" and three days per week "meeting with clients, preparing materials, and doing on-line course work." *Id.* at 1. Prior to her employment, Bankers Life sponsored Gough's participation in an online class to prepare her for the examination required for insurance agents, but required her to pay for the class, for the exam, and for insurance licenses required by both Maryland and the District of Columbia. *Id.* at 9. Gough also claims that Bankers Life encouraged its agents to buy sales leads in order to increase their likelihood of successfully selling insurance policies, but says she lacked sufficient funds to purchase any. *See id.* 9–10. As an additional job responsibility, Gough was required to mail information about Bankers Life's insurance products to "cold leads," although Bankers Life did not provide a mail room or postage for this purpose. *See id.* at 10.

Gough states that after she failed to meet her monthly sales quota, she met with her manager, Omar Torres, to discuss her career options. *Id.* at 2. Torres refused Gough's request for minimum wage protection. Shortly after that meeting, in July 2016, Gough left her position at Bankers Life. *Id.* Gough estimates that "46%" of the workers at Bankers Life left the company during her tenure. *Id.*

In January 2017, after briefly working for State Farm and interviewing for a job at Geico, Gough applied unsuccessfully for unemployment benefits. *Id.* She was purportedly unable to obtain such benefits because she had been compensated solely by commission during her time at Bankers Life. *Id.* at 2–3.

The Court dismissed Gough's Complaint without prejudice on September 21, 2018, giving her leave to file an Amended Complaint, which, as indicated, she did. In response to the Amended Complaint, ECF No. 39, Bankers Life filed its Motion to Dismiss, ECF No. 40, which Gough responded to, ECF No. 44, later supplementing it with additional documents, ECF No. 45. Bankers Life filed its Reply on November 30, 2018. ECF No. 46. After the Court granted her leave on January 30, 2019, Gough filed a Surreply. ECF No. 49-1.[2]

## II.

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards" that require a plaintiff to submit only a "short and plain statement of the claim showing that [she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). The plaintiff's statement must contain facts sufficient to "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The plausibility standard requires that the plaintiff plead facts sufficient to show by "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept the plaintiff's factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action,

---

[2] On November 5, 2018, Gough filed a Motion to Reconsider Reimbursement of Expenses, ECF No. 42, to which Bankers Life filed a Response in Opposition. ECF No. 43. Gough has yet to file a Reply. The Court has already explained to Gough that *pro se* litigants are not entitled to attorney's fees, even where attorney's fees are authorized by a fee-shifting statute. ECF No. 33 (citing *Rhoads v. F.D.I.C.*, 286 F. Supp. 2d 532, 541 (D. Md. 2003)). Therefore, the Court will **DENY** her Motion to Reconsider.

3

supported by mere conclusory statements, do not suffice." *Id.* Legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments" do not satisfy the plausibility pleading standard. *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The complaint must contain factual allegations sufficient to apprise a defendant of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

Federal courts have an "obligation to liberally construe a *pro se* [c]omplaint" and may consider additional facts and information supporting the complaint that is provided in an opposition to a motion to dismiss. *See Rush v. Am. Home Mortg., Inc.,* 2009 U.S. Dist LEXIS 112530, at *11-12 (D. Md. Dec. 3, 2009). However, this requirement "does not transform the court into an advocate," *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted), and "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)). Although the facts alleged in a *pro se* plaintiff's complaint must ordinarily be taken as true, mere conclusory statements "are not entitled to the assumption of truth." *Aziz v. Alcolac*, *Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679)) (internal quotation marks omitted).

### III.

As a preliminary matter, the Court addresses Bankers Life's argument that Gough is precluded from introducing new facts in her Opposition to Bankers Life's Motion to Dismiss and relying on any attachments thereto that were not pled in her Amended Complaint. Normally, when

4

reviewing a motion to dismiss, courts only consider "allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic." *See, e.g.*, *Verdiner v. Washington Metropolitan Area Transit Authority*, No. DKC 15-2612, 2016 WL 2736185, at *1 n.3 (D. Md. May 11, 2016) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). In effect, allowing a plaintiff to introduce new allegations through an opposition to a motion to dismiss would permit circumvention of the proper method for pleading new facts and claims: amending the complaint. *See, e.g.*, *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well established that parties cannot amend their complaints through briefing or oral advocacy.") (citations omitted); *see also Palmer v. Urgo Hotels, L.P.*, No. 8:18-cv-0085-PX, 2018 WL 5026372, at *2 (D. Md. Oct. 17, 2018) (stating that a complaint "may not be amended by the briefs in opposition to the motion to dismiss") (quoting *Mylan Labs, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (citation and internal quotation marks omitted), *aff'd* 2 F.3d 56 (4th Cir. 1993)).

However, in certain circumstances, courts may consider new facts and claims introduced by a *pro se* plaintiff in filings apart from her complaint. Thus, in *Smith v. Blackledge*, the Fourth Circuit held that the district court should have considered facts first alleged by a *pro se* prisoner plaintiff in a filing in response to the defendants' motion to dismiss. 451 F.2d 1201, 1202–03 (4th Cir. 1971). After the defendants filed a motion to dismiss, the *pro se* plaintiff filed a thirty-six-page document denominated as an intent to "Further Particularize" the initial allegations in his complaint. *See id.* at 1202. The district court construed plaintiff's filing as a response to the defendants' motion and ignored the new allegations it raised. *See id.* The Fourth Circuit ruled that the district court should have considered the *pro se* plaintiff's filing as an amendment to the

complaint, and because at the time the plaintiff filed the document he could have amended his complaint as a matter of course without leave of the court, the district court should have considered the new allegations therein. *See id.* at 1202–03. By "dismissing the complaint after the filing of the plaintiff's more particularized pleading," the district court, according to the Fourth Circuit, "was making a judgment on the merits of the entire case, thereby terminating plaintiff's right to be heard at trial on his additional claims." *Id.* at 1203. The ruling in *Smith v. Blackledge* suggests that a *pro se* plaintiff should not be deprived of the opportunity for the district court to hear all of her allegations merely because the *pro se* plaintiff does not follow the prevailing procedure for introducing them.

Although Gough titled her response to Bankers Life's Motion to Dismiss an "Opposition," the new facts it contains suggest that her filing, like that of the *pro se* plaintiff in *Blackledge*, is tantamount to an amendment of a complaint. A complaint is considered a "pleading" under the Federal Rules of Civil Procedure, Fed. R. Civ. P. 7(a)(1), and a party may amend a pleading once as a matter of course, if the pleading is one to which a responsive pleading is required, either twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(B). Accordingly, Gough's Opposition can be considered an amendment of a pleading as a matter of course because she served and filed it on November 15, 2018, twenty days after Bankers Life filed its Motion to Dismiss pursuant to Rule 12(b)(6) on October 26, 2018.

Therefore, the Court will consider facts that Gough alleges for the first time in her Opposition, ECF Nos. 44, 45, and in any exhibits attached thereto, as it reviews Bankers Life's Motion to Dismiss.

## IV.

The case turns on whether Bankers Life properly classified Gough as an independent contractor, or whether, based the economic realities of her employment, she should have been classified as an employee under the FLSA.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," and defines "employ" as "to suffer or permit work." 29 U.S.C. § 203(d), (g). "Employee" is defined, except for specific definitions of public sector and agricultural workers not applicable to Gough's case, as "any individual employed by an employer." *Id.* at § 203(e)(1). To determine whether a worker is an employee covered by the FLSA, courts apply the "economic realities" test to evaluate the relationship between the worker and the putative employer. *See Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (citations omitted). This test balances several factors: "'(1) the degree of control which the putative employer has over the manner in which the work is performed; (2) the opportunities for profit or loss dependent upon the managerial skill of the worker; (3) the putative employee's investment in equipment or material; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) whether the service rendered is an integral part of the putative employer's business.'" *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 150 (4th Cir. 2017) (quoting *Schultz*, 466 F.3d at 304–05).

The focal point of the economic realities test is whether the worker is "economically dependent" on the putative employer or is, as a matter of economic reality, in business for herself. *See Schultz*, 466 F.3d at 304. If the worker's "profit or loss depends upon [her] own creativity, ingenuity, and skill," she is properly classified as an independent contractor outside the scope of

the FLSA. *See Salinas*, 848 F.3d at 150 (citing *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)).

Here, the only factor under the economic realities test that clearly weighs in favor of classifying Gough as an employee is the sixth factor: her selling of insurance policies. In that sense, Gough clearly rendered a service that was an integral part of Bankers Life's business.

The fourth factor is indeterminate. Case law interpreting the economic realities test suggests that workers whose jobs require a specialized degree of skill might be appropriately classified as independent contractors. *See, e.g.*, *Schultz*, 466 F.3d at 308 (noting that guards responsible for conducting personal security could be "expected to offer more specialized services than the average private security guard" and this "could weigh in favor" of classifying the guards as independent contractors). Gough does not allege in either her Amended Complaint or her Opposition that selling insurance requires specialized knowledge, but the fact that Bankers Life required her to pass an insurance sales licensing examination for both Maryland and the District of Columbia might imply that a greater degree of skill is required to sell insurance than would be demanded of the average salesperson. This distinction might support classifying insurance agents as independent contractors.

Regardless of the foregoing, all the remaining factors weigh heavily in favor of classifying Gough as an independent contractor. Bankers Life appears to have maintained a minimal degree of control over Gough and its other agents, since Gough herself alleges that she frequently worked from home and often met with potential clients outside Bankers Life's offices. ECF No. 39 at 1–2. Ultimately, Gough's opportunities for profit or loss depended entirely on Gough's own efforts, since Bankers Life paid her entirely by commission and did not provide her with sales leads, requiring her to either purchase leads herself or cold-mail potential clients. *See id.* at 2, 9–10.

In sum, from all that appears in the Amended Complaint, Bankers Life invested minimally in its workers, requiring that Gough, in particular, pay all costs required to obtain her insurance licenses—from prep course tuition to license exam fees to the price of the licenses themselves. *Id.* at 9. Once she was licensed, Gough had to pay for sales leads out of her own pocket as well as the cost of postage to potential clients. *See id.* at 9–10. All this is to say that the relationship between Bankers Life and its workers appears to have been highly impermanent, with Gough estimating that "46%" of the agents who worked at Bankers Life when she started in February 2016 had left the company by the time Gough herself left in July 2016, some four months later. *Id.* at 2, 10.

While Gough may well have endured difficult personal circumstances while seeking employment, medical care, and a residence, based on the factors of the economic realities test, the only fair reading of the Amended Complaint is that Bankers Life properly classified her as an independent contractor, not as an employee. As a result, she has no plausible claim for lost wages or unemployment benefits.[3]

---

[3] Insofar as a Fair Labor Standards Act ("FLSA") claim might be inferred from the Amended Complaint, the FLSA exempts certain workers from minimum wage and unemployment benefits protections. 29 U.S.C. § 213. Bankers Life argues in its Motion to Dismiss that FLSA protections do not apply to Gough under the "outside sales" exemption. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.500. Employers bear the burden of demonstrating the applicability of an FLSA exemption by clear and convincing evidence. *See Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993); *see also Speert v. Proficio Mortg. Ventures, LLC*, No. JKB-10-718, 2011 WL 2417133, at *5–6 (D. Md. June 11, 2011) (holding that employer bore the burden of proof to demonstrate that the "outside sales" exemption applied to plaintiffs). However, individuals seeking compensation pursuant to the FLSA "bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act." *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011). Because the Court is holding that Bankers Life properly classified Gough as an independent contractor—and because Gough did not raise the issue of FLSA exemptions in either her Amended Complaint or her Opposition to Bankers Life's Motion to Dismiss—the Court finds it unnecessary to determine whether the "outside sales" FLSA exemption applies to her.

## V.

For the foregoing reasons, Bankers Life's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 40) is **GRANTED WITH PREJUDICE**, and Gough's Motion to Reconsider Reimbursement of Expenses (ECF No. 42) is **DENIED**.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**February 12, 2019**